**HEWLETT–PACKARD COMPANY,**
**Appellant**

v.

**BENCHMARK ELECTRONICS,**
**INC., Appellee.**

No. 14–03–01206–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 3, 2004.

---

Scott P. Stolley, Dallas, for appellant.

Phillip L. Sampson, Jr., Glenn A. Ballard, Jr., Houston, for appellee.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant, Hewlett–Packard Company, appeals from a final judgment based on two summary judgments granted in favor of appellee Benchmark Electronics, Inc. Concluding the summary judgment proof does not conclusively establish limitations bars Hewlett–Packard's breach of contract claim, but does conclusively establish limitations bars Hewlett–Packard's claim for money had and received, we reverse and remand in part and affirm in part.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 1995, Hewlett–Packard's predecessor, Compaq Computer Corporation, as Buyer, entered into a Purchase Agreement with Avex Electronics, Inc., Benchmark's predecessor, as Seller.[1] Under the Agreement, Benchmark was to assemble computer components, primarily motherboards, and sell them to Hewlett–Packard. The Agreement did not require Hewlett–Packard to purchase any minimum quantity of computer components, but "only establishe[d] the terms and conditions for such purchases if and when they occurr[ed]." The Agreement specifically stated the parties intended to enter into a "long term relationship."

To assemble the motherboards, Benchmark was to incorporate chipsets, which Hewlett–Packard obtained from Intel and had shipped directly to Benchmark. Under the Agreement:

> Buyer shall issue a debit memo with respect to the purchase price of Buyer Furnished Material sold by Buyer to Seller, and Buyer immediately may apply such debit memo against any amounts then owing or that may become owing by Buyer to Seller. In the event any amount reflected in a debit memo has not been satisfied in full by means of applying the Seller's invoices against the amount owed by Buyer to Seller within 45 calendar days following the debit memo date, Seller shall pay Buyer in U.S. dollars (or such other currency as Buyer and Seller may agree upon) the remaining balance of such debit memo. To secure Seller's payment obligations hereunder, Seller hereby grants to Buyer a security interest and purchase money security interest in all Buyer Furnished Material and all accounts receivable and other proceeds thereof. Buyer may take any action (without notice, presently [sic], demand, protest, notice of protest or dishonor, notice of acceleration or notice of intent to accelerate, all of which Seller hereby waives) afforded a secured party under the Uniform Commercial Code upon the occurrence of a default by Seller, and upon such occurrence, all payment obligations of Seller to Buyer shall, upon notice by Buyer, become immediately due and payable; provided, if the Default giving rise to the foregoing remedies is attributable the Seller's insolvency or any bankruptcy related proceeding affecting Seller, all obligations of Seller to Buyer shall automatically become due and payable. Any Buyer furnished material sold by Buyer to Seller shall be

---

1. Unless necessary to distinguish between predecessor and successor companies, we refer to Compaq and Hewlett–Packard as "Hewlett–Packard" and Avex and Benchmark as "Benchmark."

sold only in amounts consistent with firm schedule requirements.

Initially, the Agreement provided, "Terms of payment shall be net 45 from the date of Seller's invoice provided that Product has been received by Buyer." The parties subsequently amended this provision: "Buyer shall make payment in full for the purchase price of all Product purchased hereunder ... and received by Buyer on or before the 30th day after the date of Seller's invoice.... Any payment not received by day 45 is considered late."

The parties also agreed to a two-year limitations period for claims arising from the Agreement: "No action ... regardless of form, arising out of this Agreement may be brought by either party more than two (2) years after the cause of action has arisen; or, in the case of non-payment, more than two (2) years from the date the payment was due." The parties never amended or revoked this provision.

In August 1999, Benchmark acquired Avex. Shortly thereafter, Hewlett–Packard's demand for the completed motherboards decreased dramatically, and the parties began to wind down their relationship under the Agreement. According to Benchmark's summary judgment proof, Hewlett–Packard last supplied chipsets to Benchmark in October 1999, Benchmark delivered the last shipment of motherboards to Hewlett–Packard in January 2000, and Hewlett–Packard made its last payment to Benchmark in February 2000. Hewlett–Packard issued its last debit memo August 10, 2000.

For approximately two and one-half years, until at least May 2002, the parties attempted to reconcile their accounts, with each party claiming it was owed money under the Agreement. The parties apparently were not able to resolve their claims, and on August 7, 2002, Hewlett–Packard sued Benchmark for breach of the Agreement.

Four days after filing its answer, Benchmark moved for summary judgment on the ground of limitations. Benchmark relied on the two-year contractual limitations provision and argued it was undisputed Hewlett–Packard "brought its claim more than two (2) years after the claimed payments were allegedly due under the Purchase Agreement." As support, Benchmark pointed to (1) the undisputed evidence Benchmark acquired Avex in August 1999 and Hewlett–Packard's assertion it had an open claim dating back to Benchmark's acquisition of Avex; and (2) Benchmark's last delivery of motherboards to Hewlett–Packard in January, 2000, which necessarily would have occurred after Benchmark's last purchase of chipsets.

Hewlett–Packard responded, arguing that, although the Agreement provided Benchmark owed a cash payment if Hewlett–Packard had not applied the debit memo against amounts owing within 45 days, the Agreement did not contain a due date for the cash payment. Hewlett–Packard also argued its claim accrued when the parties ceased doing business. Hewlett–Packard contended this date was no earlier than August 10, 2000, when Benchmark admitted a transaction (issuance of the debit memo) occurred under the Agreement.

Benchmark replied, contending for the first time, "There is no dispute that according to the express terms of the [Agreement], Benchmark's payment of each of [Hewlett–Packard's] debit memos was due 45 days from the date of each debit memo." Benchmark argued Hewlett–Packard had the right to sue forty-five days after the date of each debit memo. Benchmark subsequently argued Hewlett–Packard's "causes" of action accrued on

the forty-sixth day after the date on each of Hewlett–Packard's debit memos and conceded limitations might not preclude a claim stemming from the August 10, 2000 debit memo.

On December 9, 2002, seven days before the hearing on the motion for summary judgment, Hewlett–Packard filed an amended petition. In addition to its original breach of contract claim, Hewlett–Packard asserted claims for common law fraud and fraudulent promise, breach of contract for failure to reconcile accounts, and, in the alternative, for money had and received.

On December 16, 2002, the trial court granted Benchmark's motion for summary judgment in part. The trial court ordered that, with the exception of Hewlett–Packard's claim under the August 10, 2000 debit memo, Hewlett–Packard's breach of contract claim was barred and dismissed with prejudice.

Benchmark then filed a motion for summary judgment on the additional claims asserted in the amended petition. The trial court granted the motion on all claims. Finally, the trial court severed the breach of contract claim based on the August 10, 2000 debit memo from the remaining claims, making the summary judgments final.[2] On appeal, Hewlett–Packard challenges only the summary judgments on its breach of contract claim for non-payment of the debit memos and its claim for money had and received.

## DISCUSSION

### Issue and Standard of Review

In a single issue, Hewlett–Packard contends the trial court erred in granting summary judgment in favor of Benchmark. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). When deciding whether there is a disputed material fact issue precluding summary judgment, the appellate court must take as true all evidence favorable to the non-movant. *Id.* at 548–49. The reviewing court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in her favor. *Id.* at 549.

We are limited to those grounds expressly set forth in the motion to determine whether the summary judgment was properly granted. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). When the trial court's summary judgment order does not specify the grounds for its summary judgment, this court must affirm the judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex.2003). Our review of a summary judgment is *de novo*. *Id.* at 215.

When a movant seeks summary judgment because limitations expired, it is the movant's burden to conclusively establish the bar of limitations, including when the cause of action accrued. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *Brown v. Shores*, 77 S.W.3d 884, 887 (Tex. App.-Houston [14th Dist.] 2002, no pet.). If the movant establishes the statute of limitations bars the action, the non-movant

---

2. In the course of the proceedings, Benchmark asserted a counterclaim for breach of contract based on non-payment. That counter claim remains in the original cause, along with Hewlett–Packard's breach of contract claim based on the August 10, 2000 debit memo.

must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *KPMG Peat Marwick,* 988 S.W.2d at 748.

### Breach of Contract

#### Grounds Raised and When Raised

Benchmark based its summary judgment motion on the breach of contract claim solely on the limitations paragraph in the Agreement, which provided, "in the case of non-payment," no action could be brought by either party "more than two (2) years from the date the payment was due." In its motion for summary judgment, Benchmark relied on (a) Hewlett–Packard's assertion in an e-mail that it had an open claim dating back to Benchmark's acquisition of Avex, which had occurred in 1999, and on (b) Benchmark's last shipment of motherboards in January 2000. Benchmark argued "non-payment" of the debit memos had occurred as of one of those dates. In its reply to Hewlett–Packard's response, Benchmark presented a third argument: payment on each of the debit memos was due 45 days from the date of each debit memo. In yet another reply, Benchmark expanded on this third argument, contending Hewlett–Packard's causes of action accrued on the forty-sixth day after the date on each of the debit memos.[3]

Hewlett–Packard contends none of Benchmark's three arguments address or prove when payment was due on the debit memos. Hewlett–Packard additionally argues summary judgment may not be affirmed based on the third argument because Benchmark first raised it in its reply to Hewlett–Packard's response to the summary judgment motion.

On appeal, Benchmark contends their third argument was not an additional "ground," for summary judgment, but only a rebuttal to Hewlett–Packard's response or additional reasoning in support of its sole ground of limitations. Benchmark further contends, because Hewlett–Packard addressed the argument in its amended response to the motion for summary judgment, the trial court could properly consider it.

██ Consistent with Texas Rule of Civil Procedure 166a(c), a summary judgment motion must stand or fall on the grounds expressly presented in the motion. *See McConnell,* 858 S.W.2d at 342; *see also* TEX.R. CIV. P. 166a(c). An appellate court cannot affirm a summary judgment on grounds not expressly set out in the motion or response. *Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex. 1993). Nevertheless, we need not decide whether Benchmark's third theory was sufficiently raised by the motion for summary judgment because, as discussed below, neither that theory, nor the two theories specifically raised in the motion support summary judgment on the basis of limitations.

### The Contractual Provisions on which Benchmark Based its Limitations Defense

Benchmark based its limitations defense solely on the contractual provision that, "in the case of non-payment," no action "may be brought by either party ... more than two (2) years from the date the payment was due." The parties agree this two-year contractual limitations period is enforceable. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.070(a) (Vernon 1997).

---

**3.** Benchmark made this expanded argument in its reply to Hewlett–Packard's amended response to the summary judgment motion. This reply was filed three days before the trial court heard the summary judgment motion.

■ Because the contract set the payment due date as the date on which the limitations period commenced, Benchmark was required to prove conclusively when payment was due for the chipsets Hewlett–Packard furnished. *See Seibert v. General Motors Corp.,* 853 S.W.2d 773, 775 (Tex.App.-Houston [14th Dist.] 1993, no writ) (stating, in part, defendant seeking summary judgment based on limitations must prove when the cause of action accrued, and unless movant conclusively establishes each element of the affirmative defense, non-movant plaintiff has no burden in response to defendant's motion). As discussed below, none of Benchmark's summary judgment theories and associated summary judgment proof establish when payment was due.

■ We begin with the Agreement. The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex.1996); *Clear Lake City Water Auth. v. Kirby Lake Dev., Ltd.,* 123 S.W.3d 735, 743 (Tex.App.-Houston [14th Dist.] 2003, pet. filed). To achieve this objective, we examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983); *Clear Lake City Water Auth.,* 123 S.W.3d at 743. We construe a contract from a utilitarian standpoint, bearing in mind the particular business activity sought to be served. *Lenape Res. Corp.,* 925 S.W.2d at 574; *Clear Lake City Water Auth.,* 123 S.W.3d at 743.

The mere fact the parties disagree about a contract's meaning does not make a contract ambiguous. *Appleton v. Appleton,* 76 S.W.3d 78, 84 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Neither does an ambiguity arise solely because the parties' respective interpretations of the contract are sharply conflicting. *Moncrief v. ANR Pipeline, Co.,* 95 S.W.3d 544, 547 (Tex. App.-Houston [1st Dist.] 2002, pet. denied) (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996)).

■ If, however, a contract is subject to more than one *reasonable* interpretation, it can be ambiguous. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995); *Clear Lake City Water Auth.,* 123 S.W.3d at 743. Moreover, this court may conclude a contract is ambiguous even if the parties do not contend it is. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 231 (Tex.2003). When a contract contains an ambiguity, granting a motion for summary judgment is improper because interpretation of the instrument becomes a fact issue. *Coker,* 650 S.W.2d at 394; *Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1979).

■ The ramifications of silence in a contract, however, are different. When a contract is silent, the question is not one of interpreting the language but rather one of determining its effect. *Lidawi v. Progressive County Mut. Ins. Co.,* 112 S.W.3d 725, 731 (Tex.App.-Houston [14th Dist.] 2003, no pet.). A jury may not be called upon to construe the legal effect of an agreement or to supply an essential term upon which the parties did not mutually agree. *Thompson v. CPN Partners, L.P.,* 23 S.W.3d 64, 71 (Tex.App.-Austin 2000, no pet.). Nonetheless, silence may create a latent ambiguity. *See Donahue v. Bowles, Troy, Donahue, Johnson, Inc.,* 949 S.W.2d 746, 753 (Tex.App.-Dallas 1997, writ denied) (holding buy-and-sell agreement, which did not provide any time frame within which appraisal had to be completed, contained latent ambiguity regarding which of two appraisals should be

used to determine the value of shares). In such a case, the latent ambiguity must be determined by the trier of fact and summary judgment is inappropriate. *See id.*

The Agreement provides for immediate application of a debit memo against amounts then owing or to be owed by Benchmark: "Buyer shall issue a debit memo with respect to the purchase price of Buyer Furnished Material sold by Buyer to Seller, and Buyer immediately may apply such debit memo against any amounts then owing or that may become owing by Buyer to Seller." The Agreement also appears to mandate a cash payment from Benchmark if Hewlett–Packard has not applied the debit within 45 days after the date of the debit memo:

> In the event any amount reflected in a debit memo has not been satisfied in full by means of applying the Seller's invoices against the amount owed by Buyer to Seller within 45 calendar days following the debit memo date, Seller shall pay Buyer in U.S. dollars ... the remaining balance of such debit memo.

There is nothing in either sentence, however, stating **when** Hewlett–Packard is to issue a debit memo or **when** Benchmark must make the cash payment, *i.e.,* when the payment on a debit memo is "due."

In contrast, the Agreement specifically sets due dates for other events and payments. The Agreement provides, in the case of Benchmark's default, and on Hewlett–Packard's demand, all Benchmark's obligations are "immediately due and payable." And, if the default is attributable to insolvency or bankruptcy proceedings, "all obligations of Seller to Buyer shall automatically become due and payable." Finally, the original agreement provided, "Terms of payment shall be net 45 from the date of Seller's invoice provided the Product has been received by Buyer."

That provision was subsequently amended to read:

> Buyer shall make payment in full for the purchase price of all Product purchased hereunder ... and received by Buyer on or before the 30th day after the date of Seller's invoice; provided, Seller's invoice shall not be dated earlier than the pull date of Product covered thereby.... Any payment not received by day 45 is considered late.

In short, when the parties desired a specific due date, they provided for it in the Agreement. *See Cook Composites, Inc. v. Westlake Styrene Corp.,* 15 S.W.3d 124, 132 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd) (looking at comparable language in related clause to help define the meaning of language at issue); *cf. Fireman's Fund County Mut. Ins. Co. v. Hidi,* 13 S.W.3d 767, 769 (Tex.2000) (stating, when Legislature employs term in one part of statute and excludes it in another, court presumes Legislature had a reason for doing so). They did not do so for payment on the debit-memos. We conclude the Agreement is silent regarding when payment on these memos is due.

**Benchmark's Summary Judgment Arguments**

THE FORTY-SIXTH DAY THEORY. Benchmark nevertheless reads the 45–day provision for debit memos as setting a payment due date: the forty-sixth day after the debit memo was issued. Benchmark contends this interpretation is consistent with other provisions in the Agreement and with debit memos stating, "Payment Terms: BT 45." As discussed above, however, the fact the Agreement sets a specific due and late date for the Buyer's payments argues against reading the Agreement to provide a due date for the Seller on the debit memos when similar language is lacking in the debit-memo provision.

Neither does the notation regarding payment terms assist Benchmark in conclusively proving its limitation defense. First, there is nothing in the summary judgment proof to suggest what "BT45" means. Second, resorting to evidence outside the Agreement is appropriate only if the Agreement is ambiguous.[4] *See Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 732 (Tex.1982). And, if the Agreement is ambiguous, summary judgment is not appropriate. *Coker*, 650 S.W.2d at 394; *Harris*, 593 S.W.2d at 306.

Benchmark also argues lack of a payment due date for the debit memos could mean payment might never be due. It reasons such an interpretation runs counter to the parties' intent to limit liability for non-payment to two years and would render the two-year limitations provision meaningless. Nevertheless, when a contract is silent regarding the date for an action to be taken, the courts will construe the contract as requiring such action be taken within a reasonable time. *See Price v. Horace Mann Life Ins. Co.*, 590 S.W.2d 644, 646 (Tex.Civ.App.-Amarillo 1979, no writ) (concluding contract silent regarding time within which insurer might require application for reinstatement and inferring parties intended a reasonable time); *see also Maxwell v. Lake*, 674 S.W.2d 795, 802–03 (Tex.App.-Dallas 1984, no writ) (concluding contract silent on method of exercising option and therefore inferring option could be exercised by giving notice within option period and tendering performance within a reasonable time thereafter). The question of reasonableness is usually one for the trier of fact, and Benchmark did not conclusively establish a reasonable time for the payment to be due fell outside two years of when Hewlett–Packard filed suit. *Cf. HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 634 (Tex.App.-Austin 1992, writ denied) (stating question of how long after end of accounting period seller could wait before presenting the invoices is for trier of fact).

Benchmark has not conclusively proved payment was due on the 46th day after the debit memo issued. Accordingly, it has not conclusively established its limitation defense based on that theory.

HEWLETT-PACKARD'S REFERENCE TO "AN OPEN CLAIM" DATING BACK TO 1999. Benchmark argues the following "admission" in a May 3, 2002 e-mail establishes its limitations defense: "Compaq Computer Corporation has an open claim for $12.1M due from Benchmark dating back to the acquisition of Avex."[5] Because it is undisputed Benchmark acquired Avex in

---

4. In support of its contention the notation is "relevant in determining the proper construction of the Purchase Agreement," Benchmark cites *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 132 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd). The cases cited by the *Cook* court, however, refer to evidence of the circumstances surrounding execution of the contract, not to evidence of post-contract conduct. *See Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1982); *Medical Towers, Ltd. v. St. Luke's Episcopal Hosp.*, 750 S.W.2d 820, 823 (Tex.App.-Houston [14th Dist.] 1988, writ denied).

5. Although it did not do so in its summary judgment motion, Benchmark now refers to a May 2002 letter in which Joseph Simon of Benchmark stated he had worked with a number of Compaq personnel "over the past 2½ years to obtain supporting documentation from Compaq and to provide to Compaq necessary documentation to resolve all claims between our two companies." In addition to not establishing when payment was due on the debit memos, this letter does not meet the standards for summary judgment proof. *See Schultz v. Rural/Metro Corp.*, 956 S.W.2d 757, 761 (Tex.App.-Houston [14th Dist.] 1997, no writ) (stating self-serving statements by interested witnesses regarding what they knew or intended are not easily controverted and will not support a summary judgment motion).

1999, Benchmark concludes Hewlett–Packard's lawsuit, filed in August 2002, is barred by the two-year contractual limitations period.

An e-mail, although it may constitute summary judgment proof, does not rise to the level of a judicial admission, such as would conclusively establish Benchmark's limitations defense. *See Seminole Pipeline Co. v. Broad Leaf Partners, Inc.,* 979 S.W.2d 730, 740 (Tex.App.-Houston [14th Dist.] 1998, no pet.) (stating judicial admission must be (1) made in course of judicial proceeding; (2) contrary to an essential fact for party's recovery or defense; (3) deliberate, clear and unequivocal; (4) related to fact on which judgment for opposing party could be based; and (5) enforcing admission would be consistent with public policy; also holding statements by counsel about represented companies' responsibility for overfilling of reservoir did not rise to the level of judicial admissions). Moreover, that a claim may "date back to" 1999 does not conclusively establish when payment was due on the debit memos giving rise to the claim and thus does not establish when the limitations period commenced. The e-mail does not conclusively establish Benchmark's limitations defense.

■ *THE DATE OF BENCHMARK'S LAST SHIPMENT TO HEWLETT–PACKARD.* In its summary judgment motion, Benchmark also argued Hewlett–Packard could not "push the accrual of its claim past January of 2000, because that is when the parties ceased doing business." The termination of business, however, does not conclusively establish when payment was due on a debit memo under the Agreement. In fact, at least one debit memo was issued on August 10, 2000, well after the alleged business termination date. Benchmark has conceded Hewlett–Packard's claim for the amount due on this memo might not be barred by limitations, thereby undercutting its argument Hewlett–Packard's claim accrued by January 2000. The last shipment in January 2000 does not conclusively establish Benchmark's limitations defense.

None of Benchmark's three theories, together with the summary judgment proof in support, establishes Benchmark's limitations defense as a matter of law in relation to Hewlett–Packard's breach of contract claim. Accordingly, we sustain Hewlett–Packard's issue to the extent it concerns summary judgment on Hewlett–Packard's claim for breach of the Agreement.

### *Money Had and Received*

■ Hewlett–Packard also challenges the trial court's summary judgment in favor of Benchmark on Hewlett–Packard's claim for money had and received. In its motion for summary judgment on that claim, Benchmark asserted the claim (1) was barred by a two-year limitations period and (2) failed on the merits because the undisputed facts showed Hewlett–Packard had not "overpaid" Benchmark, but had paid only what it owed on Benchmark's invoices under the Agreement and Hewlett–Packard was therefore seeking to recover "unpaid debits." Hewlett–Packard argued (1) the four-year statute of limitations applied and (2) Benchmark could not defeat the claim on the merits by quibbling about terminology because its equitable claim of money had and received was independent of the Agreement.

The Agreement contained its own limitations provision: "No action … regardless of form, arising out of this Agreement may be brought by either party more than two (2) years after the cause of action has arisen…." As discussed above, this two-year provision is enforceable. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.070(a) (Vernon 1997).

Hewlett–Packard, however, contends Benchmark, in its summary judgment motion, did not raise an argument based on this provision. We disagree. Benchmark, albeit in a footnote, argued: "Moreover, section 27(C) of the Purchase Agreement imposes a two year limitations period for any actions arising out of the Purchase Agreement." Benchmark then directed the trial court to the specific place in the summary judgment proof where the provision could be found.

Hewlett–Packard also contends the contractual limitations period does not apply because its action for money had and received is an equitable claim, which is separate from, and does not arise out of, the Agreement. We acknowledge the right to recovery under a count of money had and received *exists* independent of the parties' agreement. *See City of Harker Heights, Tex. v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex.App.-Austin 1992, no writ). Nevertheless, the action for money had and received *may arise out of*—or be founded on—the agreement. *See id.* (stating, although not dependent on either, an action for money had and received may be founded on an express agreement or one implied in fact). Such is the situation in the present case when, but for the Agreement, Hewlett–Packard would have had no claim against Benchmark.[6]

Hewlett–Packard's claim for money had and received, filed more than two years after its last payment to Checkpoint, was barred by the contractual limitations period. The trial court correctly granted summary judgment on that claim.

Accordingly, we overrule Hewlett–Packard's issue to the extent it concerns summary judgment on Hewlett–Packard's claim for money had and received.

## CONCLUSION

We affirm the trial court's judgment dismissing with prejudice Hewlett–Packard's claim for money had and received. We reverse the trial court's judgment dismissing with prejudice Hewlett–Packard's breach of contract claim for non-payment, and remand this cause for further proceedings consistent with this opinion.

---

**6.** We note at least one court has stated "an agreement is essential to a cause of action for debt." *Dallas County Cmty. College Dist. v. Bolton*, 89 S.W.3d 707, 722 (Tex.App.-Dallas 2002, pet. granted). Hewlett–Packard characterizes its claim for money had and received as an action for debt to bring it under the four year statute of limitation in Texas Civil Practice and Remedies Code section 16.004(a)(3) (Vernon 2002). Hewlett–Packard's position in this regard reinforces the conclusion its action for money had and received is an "action ... arising out of [the] Agreement."