Reversed and Remanded and Opinion filed November 24, 2004









Reversed and Remanded and Opinion filed November 24,
2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00729-CV

____________

 

ZURICH AMERICAN
INSURANCE COMPANY, Appellant

 

V.

 

HUNT PETROLEUM
(AEC), INC. F/K/A AVIARA ENERGY CORPORATION, Appellee

 



 

On Appeal from the 55th
District Court

Harris County, Texas

Trial Court Cause No. 02-31305

 



 

O P I N I O N

This is a case involving liability for
damage to an oil drilling rig caused by its submersion in saltwater floods
during a tropical storm.  Appellant and
appellee have differing interpretations of the relevant contract, and each
moved for summary judgment.  At issue is
the propriety of the trial court’s granting the appellee’s motion for summary
judgment and denying the appellant’s motion. 
Because we find a fact issue regarding an essential phrase in the
contract and that the contract is ambiguous as it is subject to more than one
reasonable but conflicting interpretation, we reverse and remand.








Pursuant to a form daywork drilling
contract, appellee Hunt Petroleum (AEC), Inc. f/k/a Aviara Energy Corporation
(“Hunt”) was operating an oil drilling rig for Nabors Drilling U.S.A., Inc. in
Vermilion Parish, Louisiana when Tropical Storm Francis hit the Louisiana coast
on September 12, 1998.  The rig was
submerged under at least four feet of saltwater, causing extensive damage.  Appellant Zurich American Insurance Company
paid its insured, Nabors, $955,120.26 to repair the damage, and Zurich, as
subrogee of Nabors’s rights under its contract with Hunt, brought this action to
recover those funds from Hunt.

The contract at issue is a
fill-in-the-blank form contract prepared by the International Association of
Drilling Contractors.  Under the
contract, Hunt is the “Operator,” and Zurich’s insured Nabors is the “Contractor.”  The following three provisions are relevant
in this suit:

14. RESPONSIBILITY FOR LOSS OR
DAMAGE, INDEMNITY, RELEASE       OF
LIABILITY AND ALLOCATION OF RISK:

14.1  Contractor’s Surface Equipment:  Contractor shall assume liability at all
times for damage to or destruction of Contractor’s surface equipment,
regardless of when or how such destruction occurs, and Contractor shall release
Operator of any liability for any such loss, except loss or damage under the
provisions of Paragraphs 10 or 14.3.

. . . .

14.3  Contractor’s Equipment - Environmental Loss
or Damage:  Notwithstanding the
provisions of Paragraph 14.1 above, Operator shall assume liability at all
times for damage to or destruction of Contractor’s equipment caused by exposure
to highly corrosive or otherwise destructive elements, including those
introduced into the drilling fluid.

17. 
FORCE MAJEURE:








Neither
Operator nor Contractor shall be liable to the other for any delays or damage
or any failure to act due, occasioned or caused by reason of any laws, rules,
regulations or orders promulgated by any Federal, State, or Local governmental
body or the rules, regulations, or orders of any public body or official
purporting to exercise authority or control respecting the operations covered
hereby, including the procurance or use of tools and equipment, or due,
occasioned or caused by strikes, action of the elements, water conditions,
inability to obtain fuel or other critical materials, or other causes beyond
the control of the party affected thereby. 
In the event that either party hereto is rendered unable, wholly or in
part, by any of these causes to carry out its obligations under this Contract,
it is agreed that such party shall give notice and details of Force Majeure in
writing to the other party as promptly as possible after its occurrence.  In such cases, the obligations of the party
giving the notice shall be suspended during the continuance of any inability so
caused except that Operator shall be obligated to pay to Contractor the Force
Majeure Rate as provided for in Paragraph 4.7 above.    

Both parties moved for summary judgment,
claiming the contract is unambiguous and supports the interpretation that the
other party is liable for damage to the rig. 
Zurich’s theory is that paragraph 14.3 states that Hunt is liable “at
all times,” even in a force majeure situation, for damage to Nabors’s equipment
caused by “exposure to highly corrosive or otherwise destructive elements” and
that salty floodwater is both highly corrosive and destructive.  Hunt claims that paragraph 17 controls as the
damage to the rig was caused by a flood from a tropical storm, which is an
“action of the elements,” and that paragraph 14.3 does not control because the
commonly understood meaning in the industry of paragraph 14.3 excludes damage
caused by salty floodwater and paragraph 14.3 does not expressly state that it
overrides paragraph 17.

The trial court found that, “with regard
to this incident, Paragraph 17 of the parties’ contract controls to the
exclusion of Paragraph 14.3” and therefore granted Hunt’s summary judgment
motion and denied Zurich’s.  In four
issues, Zurich claims the trial court’s summary judgment ruling was erroneous.

The party moving
for summary judgment has the burden to show that no genuine issue of material
fact exists and that it is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548 (Tex. 1985).  When, as here, the
trial court expressly states the ground on which it granted the motion, we must
consider that ground and may consider other grounds the trial court did not
rule on in the interest of judicial economy.  Cinn. Life Ins. Co. v. Cates, 927
S.W.2d 623, 625 (Tex. 1996).








Our primary concern in interpreting a
contract is ascertaining the true intent of the parties.  Heritage Res., Inc. v. NationsBank,
939 S.W.2d 118, 121 (Tex. 1996); Hewlett-Packard Co. v. Benchmark Elecs.,
Inc., 142 S.W.3d 554, 561 (Tex. App.—Houston [14th Dist.] 2004, pet.
filed).  We examine the writing as a
whole in an effort to harmonize and give effect to all the provisions of the
contract so that none will be rendered meaningless.  Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1983); Hewlett-Packard, 142 S.W.3d at 561.  We give terms their plain, ordinary, and
generally accepted meaning unless the contract shows the parties used them in a
technical or different sense.  Heritage
Res., 939 S.W.2d at 121.

If the contract can be given a certain or
definite legal meaning or interpretation, then it is not ambiguous, and the
court will construe it as a matter of law. 
Coker, 650 S.W.2d at 393; Cook Composites, Inc. v. Westlake
Styrene Corp., 15 S.W.3d 124, 131 (Tex. App.—Houston [14th Dist.] 2000,
pet. dism’d).  If, however, a contract is
capable of more than one reasonable interpretation, it is ambiguous.  Am. Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W.3d 154, 157 (Tex. 2003); Hewlett-Packard, 142 S.W.3d at
561.  This court may conclude a contract
is ambiguous, even though the parties do not so contend.  Hewlett-Packard, 142 S.W.3d at
561.  When a contract is ambiguous,
summary judgment is improper because the interpretation of the contract becomes
a fact issue.  Coker, 650 S.W.2d
at 394; Cook, 15 S.W.3d at 131.








The parties’ interpretation of a contract
is parol evidence, and parol evidence is not admissible to create an
ambiguity.  Friendswood Dev. Co. v.
McDade + Co., 926 S.W.2d 280, 283 (Tex. 1996).  Only after a contract has been determined to
be ambiguous can parol  evidence be
considered to help ascertain the parties’ true intent.  Id.; Mescalero Energy, Inc. v.
Underwriters Indem. Gen. Agency, Inc., 56 S.W.3d 313, 319 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied). 
In determining whether a contract is ambiguous, we look to the contract
as a whole, in light of the circumstances present when the contract was
executed.  Sun Oil Co. (Del.) v.
Madeley, 626 S.W.2d 726, 731 (Tex. 1981); Mescalero, 56 S.W.3d at
319; see also Hewlett-Packard, 142 S.W.3d at 561 (“We construe a
contract from a utilitarian standpoint, bearing in mind the particular business
activity sought to be served.”).  These
circumstances include the commonly understood meaning in the industry of a
specialized term, which may be proven by extrinsic evidence such as expert
testimony or reference material.  Mescalero,
56 S.W.3d at 320, 323; KMI Cont’l Offshore Prod. Co. v. ACF Petroleum Co.,
746 S.W.2d 238, 241 (Tex. App.—Houston [1st Dist.] 1987, writ denied).

Hunt’s theory is that paragraph 17 clearly
controls by its plain language that neither party shall be liable “for any . .
. damage . . . caused by . . . action of the elements.”  Paragraph 14.3 explicitly states that it
applies “[n]otwithstanding the provisions of Paragraph 14.1,” but because
paragraph 17 is not mentioned, Hunt asserts that paragraph 17 applies even in
the face of a claim under paragraph 14.3. 
Zurich does not dispute that a flood from a tropical storm is an action
of the elements.  Nevertheless, Zurich
contends paragraph 17 applies only to delayed or suspended performance, not
damage to equipment.  Zurich first points
to the historical meaning of force majeure clauses as relating only to excusing
performance.  See Perlman v. Pioneer
Ltd. P’ship, 918 F.2d 1244 (5th Cir. 1990). 
Regardless of its historical underpinnings, the scope and application of
a force majeure clause depend on the terms of the contract.  See Sun Operating Ltd. P’ship v. Holt,
984 S.W.2d 277, 282–83 (Tex. App.—Amarillo 1998, pet. denied); Tex. City
Ref., Inc. v. Conoco, Inc., 767 S.W.2d 183, 186 (Tex. App.—Houston [14th
Dist.] 1989, writ denied).  








Zurich interprets paragraph 17 as being
limited to operational obligations by the phrase “respecting the operations
covered hereby.”  However, reading that
phrase in the context of the sentence as a whole shows that it describes types
of laws, rules, regulations, and orders from a governmental or public body and
does not limit the scope of the items in the remainder of the sentence, such as
“action of the elements.”  Finally,
Zurich claims that Hunt never invoked paragraph 17 by giving written notice.  As written, the clause requires notice when a
party is unable “to carry out its obligations” under the contract, but it is
silent as to a situation involving only damage and not an inability to
perform.  It is, therefore, Hunt’s
interpretation that no notice is required in such circumstances.[1]

Zurich claims that paragraph 14.3 trumps
even a force majeure situation because it imposes liability on the operator “at
all times” for damage or destruction “caused by exposure to highly corrosive or
otherwise destructive elements.”  Zurich
presented undisputed evidence that floodwater is destructive and that salty
floodwater is corrosive, and therefore, under the plain meaning of those words,
the damage to the rig is covered by paragraph 14.3.  Hunt countered with expert evidence that the
common industry understanding of “highly corrosive or otherwise destructive
elements” covers only materials that emanate from the well or are added to the
drilling fluid, which does not cover saltwater flooding.  Zurich then provided its own expert evidence
that there is no generally understood industry meaning for that phrase and that
therefore we should use its ordinary meaning, which would include damage from
saltwater flooding.[2]








We conclude that summary judgment was
improper in this case.  First, there is a
fact issue as to whether there is a common industry understanding as to the
meaning of the phrase “highly corrosive or otherwise destructive
elements.”  Though Hunt presented expert
evidence of a common industry understanding of the phrase, Zurich’s experts
dispute the existence of such an understanding. 
Hunt argues that its experts are more credible based on their
qualifications and experience, but that is for the fact finder to determine.

We also conclude that the contract is
subject to more than one reasonable interpretation.  Paragraph 17, by its plain terms, applies to
a situation of damage caused by a flood. 
Even though Zurich argues that force majeure clauses historically
function to excuse performance and that portions of paragraph 17 refer to such
situations, Hunt’s interpretation that gives meaning to the word “damage” is
not unreasonable.[3]  See Schaefer, 124 S.W.3d at 159
(contracts should be interpreted to avoid rendering a provision
meaningless).  Assuming no common
industry understanding excludes it, Zurich’s plain language interpretation of
“highly corrosive or otherwise destructive elements” to include damage from
saltwater flooding is also reasonable.  See
Heritage Res., 939 S.W.2d at 121.

Not only are we faced with interpretations
of two clauses producing different outcomes as applied to this case, there are
two reasonable but divergent ways to reconcile these clauses.  Zurich’s interpretation that paragraph 14.3
controls based on the phrase “at all times” is certainly reasonable, based on
the ordinary meaning of that phrase.  On
the other hand, the parties knew how to expressly exclude other contract
provisions from the scope of paragraph 14.3 (as they did with paragraph 14.1),
but they did not include paragraph 17 in that exclusion.  See Hewlett-Packard, 142 S.W.3d at 562
(“[W]hen the parties desired a specific due date, they provided for it in the
Agreement.”).  It is therefore reasonable
to interpret paragraph 14.3 as being subject to paragraph 17.








Given conflicting yet reasonable
interpretations that cannot be harmonized, we conclude the contract is
ambiguous.  See Trinity Indus., Inc.
v. Ashland, Inc., 53 S.W.3d 852, 860 (Tex. App.—Austin 2001, pet. denied)
(finding contract ambiguous when “faced with at least two somewhat
contradictory meanings” that were both reasonable).  Therefore, the trial erred in granting summary
judgment.[4]

We reverse the trial court’s judgment and
remand for further proceedings consistent with this opinion.

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

 

Judgment
rendered and Opinion filed November 24, 2004.

Panel
consists of Justices Yates, Edelman, and Guzman.

 

 

 

 

 

 











[1]  In addition to
its history, grammar, and notice arguments, Zurich points to evidence that Hunt
could have moved the rig before the storm hit and then asserts that Hunt cannot
use the force majeure clause because “when it is a party’s own negligence that
proximately causes the loss, the courts have held that it cannot be a force
majeure event as a matter of law.” 
However, Zurich did not make any negligence argument to the trial court,
and therefore it cannot make such an argument for the first time on
appeal.  Madeksho v. Abraham, Watkins,
Nichols & Friend, 57 S.W.3d 448, 453 (Tex. App.—Houston [14th Dist.]
2001, pet. denied).  Zurich asserted
below that since Hunt could have taken steps to protect the rig, the damage was
not “beyond the control” of Hunt under paragraph 17.  That is not the same as arguing that
negligence essentially negates a force majeure clause a matter of law.  See Sun Operating, 984 S.W.2d at
283–84 (refusing to imply a duty to exercise due diligence into force majeure
clause containing language about causes “beyond the control” of the
party).  Even assuming Zurich preserved
this argument and that negligence was a proper theory under the wording of this
force majeure clause, Zurich presented no evidence of a standard of care or
that Hunt violated any such standard.





[2]  Zurich
criticizes Hunt’s interpretation in that it gives the word “elements” a
different meaning in paragraph 17 than in paragraph 14.3.  This is too narrow of a view.  Both parties appear to agree that the phrase
“action of the elements” in paragraph 17 refers to weather-type
conditions.  Paragraph 14.3 refers not to
an “action of the elements” but to “highly corrosive or otherwise destructive
elements,” which might well be intended to cover nonweather conditions such as
gas or chemical exposure.  Because the
context and phrasing are different, it is not unreasonable that its meaning
would be different in each paragraph as well.





[3]  Even Zurich’s
counsel admitted at oral argument that the term “damage” in paragraph 17 could
be interpreted to include physical damage caused by a force majeure event.





[4]  Because we
conclude there is a fact issue regarding the interpretation of the contract, we
need not consider whether there is also a fact issue regarding the amount of
Zurich’s claimed damages.