ACCEPTED
14-14-00713-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
9/18/2015 2:53:03 PM
CHRISTOPHER PRINE
CLERK

## CASE NO. 14-14-00713-CV

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
9/18/2015 2:53:03 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE
## COURT OF APPEALS
## FOR THE
## FOURTEENTH JUDICIAL DISTRICT
## HOUSTON, TEXAS

**ANIL NINAN,**
*Appellant,*

**v.**

**HOUSTON COMMUNITY COLLEGE SYSTEM,**
*Appellee.*

On Appeal from the 164th Judicial District Court of Harris County, Texas
Trial Court Cause No. 2013-05552

## APPELLANT ANIL NINAN'S MOTION FOR REHEARING

TO THE HONORABLE COURT OF APPEALS:

Anil Ninan ("Ninan" or "Appellant") files this Motion for Rehearing pursuant to Texas Rule of Appellate Procedure 49.1 and would show as follows:

1

## ARGUMENT

**Whether Houston Community College's grievance procedures are available to terminated at-will employees is ambiguous, because the most reasonable interpretation of C.7.1 is that an employee can only sue after exhausting all appeals that are available to them. Any other interpretation contradicts the plain meaning of the grievance and termination procedures, C.22.1 and C.21.3.**

**1. No procedure is available for at-will employees to appeal termination.**

   **a. C.22.1 states that the terminations are processed under C.21.3 and that filing a complaint under C.22.1 will have no effect on a termination.**

Houston Community College's ("HCC") grievance procedure under C.22.1 specifies that filing a formal complaint under C.22.1 will have no effect on a termination. "A recommendation from the Administration to the Chancellor regarding the termination or non-renewal of an employee will not be stayed or put aside as a result of the employee filing a formal complaint." (CR:477). C.22.1 further refers terminations to a separate procedure, C.21.3. "Terminations and non-renewals are processed in accordance with HCC Procedure C.21.3 Terminations and Non-renewals." *Id.*

   **b. C.21.3 provides a separate complaint procedure for terminated contractual employees and no complaint procedure for terminated at-will employees.**

A separate appeal procedure to challenge terminations exists for HCC's terminated contractual employees under C.21.3:

Contractual employees who are recommended for termination during the contract term shall be afforded written notice of the reasons for termination and an opportunity for a hearing prior to any termination decision being implemented. The notice and hearing shall comport with constitutional due process requirements. The Chancellor shall prepare specific procedures governing the termination of contractual employees.

(CR:471).

By contrast, C.21.3 states the following under "Termination of At-Will Employees": "The decision of the Chancellor or his or her designee is final." (CR:474).

Accordingly, terminations are not subject to the C.22.1 procedure, and no procedure is in place to challenge at-will terminations.

To summarize HCC's grievance procedures per the above:

**C.7.1**
Refer to procedures and file available complaint =>

**C.22.1**
1. Suspension, demotion, transfer, pay issues, work/behavior related complaints
            => file complaint under C.22.1 with immediate supervisor
2. Terminations
            => refer to C.21.3, complaint under C.22.1 has no effect =>

**C.21.3**
2a. Contractual employee => request a hearing
2b. At-will employee => decision is final

**c. Accordingly, under the procedures, contractual terminations can be appealed under C.21.3, while appealing at-will terminations is specified as unavailable and futile.**

The purpose of requiring an employee to use available complaint procedures is to allow the issue to be remedied internally through available complaint procedures before suit is filed and the governmental entity is exposed to litigation expenses. *See City of Colorado City v. Ponko*, 216 S.W.3d 924, 928 (Tex. App.—Eastland 2007, no pet.) (emphasizing that if no applicable procedure is available, the governmental entity cannot take advantage of this benefit). If the complaint procedure is futile and meaningless for terminations, as C.22.1 states, and terminations of at-will employees are final, as C.21.3 states, there is no avenue to allow the issue to be remedied internally, and therefore no reason for a terminated at-will employee to file a complaint.

**d. C.7.1's reference to termination is relevant to terminated contractual employees. It also implies that HCC would have listed "termination" in C.22.1's grievable list of items, had it wished to include terminations under the C.22.1 procedure.**

The Court's analysis in its Opinion focused heavily on the word "termination" being referenced in C.7.1. Naturally, a terminated contractual employee would have to request a hearing as provided under C.21.3 to exhaust complaint procedures before filing suit under the Whistleblower Act.

If anything, the inclusion of "termination" in C.7.1, while omitting "termination" from the list in C.22.1, supports that the procedures available to appeal a termination are limited to what is provided in C.21.3. (CR:475,484). If HCC meant to include terminations in the list of grievable items under C.22.1, it knew how to do it. *See Pioneer Chlor Alkali Co., Inc. v. Royal Indem. Co.*, 879 S.W.2d 920, 938 (Tex. App.—Houston [14th Dist.] 1994, no writ) (finding that the word "corrosion" in a provision was at best ambiguous as to whether it included loss caused by or resulting from corrosion, because the insurer included such an additional causation definition elsewhere in the contract as a separate item, but did not do so in this provision).

C.22.1 and C.21.3 provide no procedure through which terminated at-will employees may appeal. Therefore, the most reasonable construction of C.7.1 is that an employee must exhaust all appeals that are available to them under the System's complaint procedures before filing suit.

In light of the above, whether HCC has a complaint procedure available for terminated at-will employees is ambiguous as a matter of law, and the grant of HCC's plea to the jurisdiction is improper and should be reversed.

**2. Under well established rules of construction, and following two prior Texas Courts of Appeals' holdings that a complaint procedure directing complaints to the employee's supervisor is ambiguous as to whether it applies to terminations as a matter of law, C.22.1 is ambiguous as to whether it covers terminations.**

   **a. The plain and ordinary meaning of "generally limited to" is "as a rule, limited to" or "usually limited to." It does not mean "merely illustrative."**

"Generally," according to Merriam-Webster's Dictionary, means:

"in a general way : in a way that is not detailed or specific : in most cases : by or to most people : in a general manner: as

a : in disregard of specific instances and with regard to an overall picture <generally speaking>;

b : as a rule : usually."

*Generally Definition*, MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/generally (last visited Sept. 16, 2015).

Examples from caselaw show the phase "generally limited to" used by courts to mean, in effect, "as a rule, limited to," with at best irrelevant or abnormal exceptions. *E.g., In re T.A.W.*, 234 S.W.3d 704, 705 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("Although a juvenile court does not lose jurisdiction when a juvenile turns eighteen, such jurisdiction is generally limited to either transferring the case under section 54.02(j) or dismissing the case."); *Ramey v. Fed. Home Loan Mortgage Corp.*, 14-14-00147-CV, 2015 WL 3751539, at *2 (Tex. App.—Houston [14th Dist.] June 16, 2015, no pet.) ("Our review is

generally limited to the record of the proceedings in the trial court."); *Garza v. Dealers Elec. Supply*, 14-02-01127-CV, 2004 WL 1193698, at \*1 (Tex. App.—Houston [14th Dist.] June 1, 2004, no pet.) ("Thus, an action for the price is generally limited to cases in which the buyer has accepted the goods, the goods have been destroyed after risk of loss passed to the buyer, or resale of the goods is otherwise shown to be impracticable."); *Parker v. State*, 14-00-00412-CR, 2001 WL 627588, at \*2 (Tex. App.—Houston [14th Dist.] June 7, 2001, pet. ref'd) ("Where the witness creates a false impression of law abiding behavior, he "opens the door" on his otherwise irrelevant past criminal history and opposing counsel may expose the falsehood. This exception, however, is not broadly construed. Rather, it is generally limited to those instances in which a witness makes assertions about his past which are patently untrue, or extremely misleading.") (internal citations omitted).

Accordingly, the term "generally limited to," according to its plain and ordinary meaning, is not merely illustrative but corresponds to "as a rule, limited to," "normally limited to" or "usually limited to."

### b. The omission of the glaringly obvious adverse employment action "termination" from a list of adverse employment actions covered under C.22.1 has meaning.

While "generally limited to" countenances the inclusion of an additional remote or unforeseen exception, this is not the case here. The absence of such an

obvious term as "termination" out of a list of covered items including every specific adverse action short of termination has meaning. *See Pioneer Chlor Alkali Co., Inc. v. Royal Indem. Co.*, 879 S.W.2d 920, 938 (Tex. App.—Houston [14th Dist.] 1994, no writ) ("We must presume that such an omission was purposeful. At the very least, the omission creates an ambiguity precluding summary judgment.") (internal citations omitted); *Hewlett-Packard Co. v. Benchmark Electronics, Inc.*, 142 S.W.3d 554, 561-62 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (silence may create a latent ambiguity for the trier of fact to resolve, rendering summary judgment inappropriate).

Accordingly, the omission of "termination" from a list of covered actions has contextual meaning and creates ambiguity regarding whether terminations are covered under C.22.1.

### c. The mention of "terms and conditions of employment" in C.22.1 is qualified by the list of items that C.22.1 is "generally limited to."

C.22.1 contains the following definitions:

Complaint – For the purposes of this procedure, the terms "grievance" and "complaint" are the same and can be used interchangeably. A complaint is a claim brought by an employee against a supervisor regarding the terms or conditions of employment or against another employee for work related issues or problems."

Complaints or Grievable Actions: Employment actions taken against regular employees that are subject to the Informal or Formal Complaint Procedures. The types of complaints that fall under this procedure are generally limited to the following: demotions,

involuntary transfers to another job classification, suspensions with or without pay, pay issues that do not involve complaint issues regarding the HCC compensation procedures and work or behavior related complaints.

(CR:475).

This second provision, as it states, limits the "types of complaints that fall under this procedure." *Id.* Otherwise, the provision would be meaningless. In accordance with canons of construction, each provision of a contract should be given effect, if possible, and terms and sentences should not be interpreted in isolation, but construed in the context of the rest of the document. *Plains Exploration & Prod. Co. v. Torch Energy Advisors Inc.*, 13-0597, 2015 WL 3653330, at *7 (Tex. June 12, 2015). Accordingly, the definition of "complaint," in isolation, does not control and must be interpreted in light of the limitations expressed throughout the rest of the document.

> **d. C.22.1 repeatedly states that an employee must, and can only, initiate its procedures by requesting a meeting with their immediate supervisor. The complaint procedures therefore do not unambiguously apply to a terminated employee, according to two Texas courts previously interpreting similar complaint procedures.**

C.22.1 reinforces throughout its text that its complaint procedures can only be initiated by first directing an informal complaint to the employee's direct supervisor:

9

A complainant is required to attempt to resolve any disputes through the Informal Complaint Procedure prior to seeking recourse through the Formal Complaint Procedure.

…

The Formal Procedure is the process established to resolve those work-related issues specified above that could not be resolved through the Informal Complaint Procedure.

…

An employee must initiate the Informal Complaint Procedure regarding the complaint (or last of a series of grievable actions) by requesting a meeting with his/her supervisor and informally discussing the issues within five (5) working days of the action.

…

An employee who fails to initiate the Informal Complaint Procedure forfeits his/her right to utilize these employee complaint procedures.

…

If a complaint is not resolved through the Informal Complaint Procedure, a regular employee may, but is not required to, proceed with the Formal Complaint Procedure.

…

In order to proceed with the Formal Complaint Procedure, the employee must complete the Informal Complaint Procedure, or attempt to complete the Informal Procedure, with his/her direct supervisor or next level supervisor.

(CR: 475, 476, 478, 479).

C.22.1 provides no other option for initiating its procedures.

The two separate Texas appellate court decisions confronting such an initiation requirement have found that a requirement to address complaints to an employee's direct supervisor renders a policy ambiguous as to whether it applies to

10

terminations (at least in the absence of language clarifying specifically that termination is covered), excusing the employee's duty to initiate a complaint before filing suit under the Whistleblower Act. In *Leyva*, the court held a similar two-step policy, requiring complaints at the first step to be directed to the employee's supervisor, to be ambiguous regarding its coverage of terminated employees. *Leyva v. Crystal City*, 357 S.W.3d 93, 101 (Tex. App.—San Antonio 2011, no pet.) ("…all of the active employees, whether part-time, full-time or probationary, have a supervisor to whom they can direct a grievance under the stated procedure—but terminated or former employees do not."). In *Curbo*, the court held a similar policy to be ambiguous and reversed the trial court's dismissal of the suit on jurisdictional grounds, reasoning that "consistent references to 'your section director' within the outlined grievance process imply that its application is limited to complaints arising during the course of employment." *Curbo v. State, Office of the Governor*, 998 S.W.2d 337, 343 (Tex. App.—Austin 1999), *disapproved of on other grounds*, *Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004). *See also City of Houston v. Williams*, 353 S.W.3d 128, 148 (Tex. 2011) (holding that under the terms of the collective bargaining agreement, retired firefighters did not fall within the class of persons to whom the grievance procedure is made available, where the CBA encouraged an aggrieved firefighter to "verbally inform his/her immediate supervisor of the grievance" and

the grievance procedure was specified to be available to "any full time, permanent paid employee." *Id.*

The reasoning of *Douglas* is in accord with the above cited cases. Because the procedure in *Douglas* stated that it did not apply to <u>probationary</u> dismissals, as discussed in Appellant's Brief, the only reasonable inference was that the procedure applied to non-probationary dismissals. The manual in *Douglas* qualified that the grievance process "intended to apply to most situations" involved as its first step submitting "the grievance in writing on a form provided by the agency" as well as contacting an immediate or next level supervisor. *Douglas v. Houston Hous. Auth.*, 01-11-00508-CV, 2013 WL 2389893, at *4 (Tex. App.—Houston [1st Dist.] May 30, 2013, no pet.). The policy in *Douglas*, unlike that at issue in *Curbo*, *Leyva*, and in this case, unambiguously applied to terminations. It also contemplated, by its plain language, alternative options to initiate a grievance. Here, by contrast, C.22.1 states a mandatory requirement that the employee initiate the complaint by "requesting a meeting with his/her supervisor and informally discussing the issues." (CR:478).

In light of the caselaw, and especially in light of every other textual indication present, as detailed above, that C.22.1 was not intended to apply to terminations, the Court should find that C.22.1 can reasonably be interpreted to

exclude terminations and is therefore ambiguous at best as to whether it applies to terminations.

In light of the above, whether HCC has any procedure available to challenge an at-will termination is subject to more than one reasonable interpretation, rendering its policy ambiguous on this point as a matter of law. Accordingly, Ninan was not required to initiate complaint procedures under C.22.1 prior to filing suit under the Whistleblower Act.

## PRAYER

Appellant Anil Ninan respectfully requests that this Court grant Appellant's Motion for Rehearing, reverse the trial court's grant of HCC's plea to the jurisdiction and summary judgment, and remand to the trial court for further proceedings.

Respectfully submitted,

*/s/ Todd Slobin*
TODD SLOBIN
tslobin@eeoc.net
TEXAS STATE BAR NO. 24002953
DORIAN VANDENBERG-RODES
drodes@eeoc.net
TEXAS STATE BAR NO. 24088573
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993
**ATTORNEYS FOR APPELLANT
ANIL NINAN**

13

of Counsel:
SHELLIST LAZARZ SLOBIN, LLP

## **CERTIFICATE OF SERVICE**

I certify that a correct copy of the foregoing instrument has been forwarded via electronic filing on this the 18th day of September, 2015, to:

Paul A. Lamp
Stephanie E. Maher
Rogers Morris & Grover LLP
5718 Westheimer Road, Suite 1200
Houston, Texas 77057

*/s/ Todd Slobin*
Todd Slobin

## **CERTIFICATE OF COMPLIANCE**

I certify that Appellant's Motion for Rehearing contains 2,705 words.

*/s/ Todd Slobin*
Todd Slobin