In The
Court of Appeals
For The
First District of Texas
____________
NO. 01-01-01006-CV
____________

W.A. MONCRIEF, JR., INDIVIDUALLY AND AS INDEPENDENT
CO-EXECUTOR OF THE ESTATE OF W.A. MONCRIEF, and
CHARLES B. MONCRIEF, AS INDEPENDENT CO-EXECUTOR
OF THE ESTATE OF W.A. MONCRIEF, Appellants

v.

ANR PIPELINE COMPANY, Appellee




On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 99-36292




O P I N I O N
           ANR Pipeline Company (ANR), appellee, filed a declaratory judgment action against
appellants, W.A. Moncrief, Jr., individually and as independent co-executor of the estate of
W.A. Moncrief, and Charles B. Moncrief, as independent co-executor of the estate of W.A.
Moncrief (the Moncriefs). ANR requested the trial court to declare the rights and obligations
of the parties under a “take-or-pay” settlement agreement. The trial court granted ANR’s
motion for summary judgment and denied the Moncriefs’ motion for partial summary
judgment, and the Moncriefs appealed. We affirm. 
BACKGROUND
            In 1972, W.A. Moncrief and his son, W.A. Moncrief, Jr., discovered the Madden
Deep Field, a natural-gas field in Wyoming. The federal government is one of the principal
royalty owners of this gas field. In 1980, the Moncriefs and Michigan-Wisconsin Pipe Line
Company, the predecessor to ANR, entered into a gas-purchasing agreement that provided
for a base price of $5 per million British thermal units (MMBtu) and included an automatic
price-escalation clause that increased the price ANR paid to the Moncriefs each quarter. The
contract also contained a “take-or-pay” clause that provided for ANR to take or pay for 80%
of the gas the Moncriefs could deliver each year. However, the contract did not contain a
market-out clause to allow ANR to lower the price. By 1989, the price had reached $10.86
per MMBtu. 
           In 1984, the Federal Energy Regulatory Commission (FERC) issued an order that, in
effect, released many of the pipelines’ customers from their take-or-pay contracts with the
pipelines, but did not release the pipelines from their contracts with the producers. The
pipelines’ former customers were then free to seek gas at a lower price than they would have
had to pay under their contracts with the pipelines. As a result, the pipelines had a severely
reduced market for the gas they were required to purchase from the producers at the contract
price, but, under their contracts, had to pay for the gas they could not take. FERC later issued
an order permitting the pipelines’ former customers to purchase gas directly from the
producers and requiring the pipelines to transport the gas. 
           It was in this climate that, in 1987, ANR, unable to buy the quantities of natural gas
for which it had contracted, stopped paying the Moncriefs under the take-or-pay clause. The
Moncriefs filed a lawsuit against ANR for breaching its obligation either to take the
minimum quantity of gas specified under the existing gas-purchase agreement or to pay for
the minimum quantity of gas. The parties settled in 1989 and executed a Confidential
Settlement Agreement and Release (settlement agreement), which incorporated four other
agreements, including a 1989 Amendment to Gas Purchase Agreement and an Agreement
on Future Royalties. Consistent with the terms of the settlement, ANR paid the Moncriefs
$80 million to settle all claims; the Moncriefs agreed to reduce the contract price and the
quantity of gas ANR was required to buy; and ANR agreed to pay the Moncriefs half of any
“additional royalties,” as defined in the Agreement on Future Royalties, that might be
claimed by royalty owners on gas sold after June 1, 1989. The $80 million was
nonrecoupable, meaning that, in future years, ANR could not attribute any gas purchases over
the required amount to a portion of the settlement payment, thus recouping a portion of the
payment.
           In 1993, the United States Mineral Management Service (MMS), gave notice of its 
new policy of collecting royalties on settlement funds from natural gas producers who had
settled take-or-pay disputes with pipelines. MMS provided the producers with instructions
for calculating any royalties due on such settlements and told them to forward the
calculations and royalties to MMS. If MMS disagreed with the allocation of the settlement
funds, it would inform the producers of that fact. On March 8, 1995, MMS sent a letter to
the Moncriefs, advising that it had reviewed the Moncriefs’ settlement with ANR, it
disagreed with the Moncriefs’ allocation of the funds, and the Moncriefs may have underpaid
royalties to MMS. In an initial meeting with the Moncriefs’ personnel, MMS claimed that
the Moncriefs owed $6.5 million in royalties and $1.7 million in interest due on the take-or-pay settlement between the Moncriefs and ANR. The Moncriefs settled with MMS for
$1,711,788 and then billed ANR for 50% of the payment based on the Moncriefs’
interpretation of the Agreement on Future Royalties. ANR refused to pay any royalties on
the grounds that the government’s claim fell under section 4 )Payment Burden
Responsibilities) of the settlement agreement and not the Agreement on Future Royalties. 
           ANR sued for a declaratory judgment in which it contended that the Moncriefs were
responsible for all the royalties that MMS claimed because the royalties were based solely
upon ANR’s settlement payment. ANR reasoned that any claim based on its payment under
the settlement agreement was governed by the Payment Burden Responsibilities clause of the
settlement agreement. ANR filed a motion for summary judgment, and the Moncriefs filed
a motion for partial summary judgment. The trial court granted ANR’s motion and denied
the Moncriefs’ motion. On appeal, the Moncriefs present three issues contending that (1) the
federal government’s demand came under the Agreement on Future Royalties, (2) the
Payment Burden Responsibilities clause of the settlement agreement dids not override ANR’s
agreement to pay future royalties, and (3) the trial court erred in granting ANR’s motion for
summary judgment and denying the Moncriefs’ motion. 
DISCUSSION
Standard of Review
           Under rule 166a(c), summary judgment is proper only when the movant establishes
that there is no genuine issue of material fact and that the movant is entitled to judgment as
a matter of law. Tex. R. Civ. P. 166a(c); Randall’s Food Mkts., Inc. v. Johnson, 891 S.W.2d
640, 644 (Tex. 1995); Lawson v. B Four Corp., 888 S.W.2d 31, 34 (Tex. App.—Houston [1st
Dist.] 1994, writ denied). In reviewing a summary judgment, we must indulge every
reasonable inference in favor of the nonmovant and resolve any doubts in its favor. Johnson,
891 S.W.2d at 644; Lawson, 888 S.W.2d at 33. We will take all evidence favorable to the
nonmovant as true. Id. As movant, the defendant is entitled to summary judgment if the
evidence disproves as a matter of law at least one element of each of the plaintiff’s causes
of action. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Marchal v. Webb,
859 S.W.2d 408, 412 (Tex. App.—Houston [1st Dist.] 1993, writ denied). 
            We will affirm the summary judgment if any of the theories advanced in the motion
for summary judgment and preserved on appeal is meritorious. See State Farm Fire & Cas.
Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). 
Rules of Contract Construction
           The issues in this case are governed by the interpretation of section 4 of the settlement
agreement, entitled Payment Burden Responsibilities, and the “additional royalties”
provisions of the Agreement on Future Royalties. In construing a written contract, our
primary concern is to ascertain the true intentions of the parties, as expressed in the written
instrument. Lenape Res. Corp. v. Tenn. Gas Pipeline Co., 925 S.W.2d 565, 574 (Tex. 1996). 
When a contract is worded such that it has a certain and definite legal meaning, it is
unambiguous. Connelly v. Paul, 731 S.W.2d 657, 660 (Tex.App.—Houston [1st Dist.] 1987,
writ ref’d n.r.e.). The mere fact that the parties disagree about its meaning does not make an
otherwise straightforward contract ambiguous. GTE Moblinet of S. Tex. Ltd. P’ship v.
Telecell Cellular, Inc., 955 S.W.2d 286, 289 (Tex.App.—Houston [1st Dist.] 1997, writ
denied). Nor does an ambiguity arise just because the parties’ respective interpretations of
the contract are sharply conflicting. Columbia Gas Transmission Corp. v. New Ulm Gas,
Ltd., 940 S.W.2d 587, 589 (Tex. 1996). If a contract is subject to more than one reasonable
interpretation, it can be ambiguous. Nat’l Union Fire Ins. Co. v. CBI Indus., Inc., 907
S.W.2d 517, 520 (Tex. 1995). In this case, neither party argues that the contract is
ambiguous, but each has a different interpretation of the effect of contract, and the Moncriefs
argue that we should consider the intent of the parties. Therefore, we must determine
whether there is more than one reasonable interpretation of the provisions within the contract,
thus creating a fact issue concerning the parties’ intent. 
The Settlement Agreement
           The provisions at issue in this appeal are section 4 of the settlement agreement,
entitled Payment Burden Responsibilities, and portions of the Agreement on Future
Royalties. The settlement agreement provided as follows:
3.Payments: 
(a) As a settlement payment, Buyer shall pay Seller a non-recoupable sum of Eighty Million Dollars ($80,000,000), in two installments:
(i) Sixty-Five Million Dollars ($65,000,000), upon execution and delivery by
Seller of this Settlement Agreement and the Exhibits hereto, and (ii) Fifteen
Million Dollars ($15,000,000) on January 2, 1990. Buyer shall in addition pay
Seller on January 2, 1990, simple interest from June 1, 1989, to January 1,
1990, on the sum of Fifteen Million Dollars ($15,000,000) at the rate of one
percent less than the prime rate in effect from time to time at Citibank, N.A.,
New York, New York. 

                      . . . .
 
4.Payment Burden Responsibilities. Seller shall be solely
responsible for payment of any taxes, sums due, or other burdens of any kind
which may be claimed, on or by reason of, any payment made by Buyer to
Seller under the Settlement Agreement whether claimed by any public or
governmental body . . . or other entity entitled to production or payment for
production . . . .
 
. . . . 
 
10.Agreement on Future Royalties. Buyer and Seller shall
contemporaneously execute an Agreement on Future Royalties for gas sold and
to be sold by Seller to Buyer on and after June 1, 1989, in the form attached
hereto as Exhibit C. 

                      . . . .
 
17.Entire Agreement. This Settlement Agreement, and the Exhibits
attached hereto, contain the entire understanding and agreement between the
parties and supersede any and all prior agreements, arrangements, or
understandings between the parties relating to the subject matter hereof. No
oral understandings, statements, promises, or inducements contrary to the
terms of this Settlement Agreement exist. 
The Agreement on Future Royalties provided, in pertinent part: 
1.(c) “Additional Royalties” means the excess of (i) the amount
of royalty payments Seller is required by its leases to make to its lessor on gas
sold on and after June 1, 1989, by Seller to Buyer under the Wyoming
Contract, over (ii) the amount such royalty payments would have been if
computed on the price paid to Seller by Buyer . . . .
 
2. Additional Royalties shall be computed on gas sold by Seller to
Buyer on and after June 1, 1989, from the inception of the lessor’s claim or
June 1, 1989, whichever date is later. 
 
3. If Seller is required to pay Additional Royalties by the final and
unappealable judgment of a judicial body having jurisdiction, or by settlement
in accordance with Section 6(a)(iv) or Section 9 below, Buyer shall reimburse
Seller for 50% of such Additional Royalties.
           The Moncriefs first contend that they had the right to negotiate an excess royalty
clause that shifted half the risk of excess royalties to ANR, citing Transcontinental Gas Pipe
Line Corp. v. Texaco, Inc., 35 S.W.3d 658, 664 (Tex. App.—Houston [1st Dist.] 2000, pet.
denied). Although the Moncriefs’ contention is true, it does not address the issue of whether
the clause shifted the risk of the MMS payment, which was based entirely on the settlement
payment from ANR to the Moncriefs. 
           Next, the Moncriefs contend that we should look to the intent of the parties and the
negotiation history of the settlement, relying again on Transcontinental. See id. at 667. In
Transcontinental, this Court was interpreting an excess royalty payments clause in which the
term “excess royalty” was not defined. Id. The Court looked to the parties’ negotiations to
determine the meaning of the term. Id. 
           In this case, the term “additional royalties” is defined as applying only to royalties on
gas sold on or after June 1, 1989. ANR’s settlement with the Moncriefs was before June 1,
1989. Although MMS, in its letter to the Moncriefs, indicated that it was allocating a portion
of the $80 million to gas produced after June 1, 1989, there was nothing in the settlement
agreement to justify such a claim. The funds paid could not have been attributed to any gas
sold by the Moncriefs after June 1, 1989. Therefore, the Agreement on Future Royalties did
not apply to MMS’s demand for royalties on the settlement funds.


 
           The Moncriefs also argue that section 4 of the settlement agreement was intended to
discharge existing burdens, not future royalties. The Moncriefs point to the language of
section 4, which makes the Moncriefs responsible for “payment of any taxes, sums due . . .”
to support this argument. However, section 4 goes on to say “or other burdens of any kind
which may be claimed, on or by reason of, any payment made by Buyer to Seller under the
Settlement Agreement whether claimed by any public or governmental body . . . or other
entity entitled to production or payment for production . . . .” MMS’s claim was based
entirely on the payment made by ANR to the Moncriefs under the settlement agreement. The
payment was not linked to any severed gas. Therefore, MMS’s claim was governed by
section 4 of the settlement agreement.
CONCLUSION
           The responsibility for payment of the claim made by MMS on the payment made by
ANR to the Moncriefs under the settlement agreement is governed by section 4 of the
settlement agreement, not by the Agreement on Future Royalties. Therefore, the trial court
did not err in granting ANR’s motion for summary judgment and in denying the Moncriefs’. 
Accordingly, we overrule all of the Moncriefs’ issues. 
           We affirm the judgment. 
 
 
                                                                             Sam Nuchia
                                                                             Justice

Panel consists of Justices Nuchia, Jennings, and Radack. 
Publish. Tex. R. App. P. 47.