**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00180-CV

———————————

**PEREGRINE OIL & GAS, LP, Appellant**

**V.**

**HRB OIL & GAS, LTD. AND VHPM, LLC, Appellees**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-45652**

---

## MEMORANDUM OPINION

Appellant, Peregrine Oil and Gas, LP ("Peregrine"), challenges the trial court's judgment in favor of appellees, HRB Oil & Gas, Ltd. and VHPM, LLC (collectively "HRB"), on its claims against HRB for breach of contract and money had and received. In six issues, Peregrine contends that the trial court erred in

granting summary judgment in favor of HRB and denying Peregrine's summary-judgment motion.

We affirm in part and reverse and remand in part.

**Background**

In its original petition, filed on July 8, 2016, Peregrine alleges that it entered into an agreement with HRB and other entities entitled "Participation Agreement, Block A-155, Galveston Area, South Addition, OCS-G 30654" (the "Participation Agreement"), which set forth the terms and conditions under which the parties would "participate in the drilling of wells" on an offshore oil and gas lease between Peregrine and the United States Department of Interior, Minerals Management Service.

To earn an interest from Peregrine, the "Operator" under the lease, HRB and the other entities had to, pursuant to the Participation Agreement, pay their share of expenses. Under Exhibit "A" to the Participation Agreement, HRB was entitled to an 8.10811% working interest and 6.43243% net revenue interest "before payout" and an 6.06108% working interest and 4.82432% net revenue interest "after payout." Peregrine, as Operator, marketed production under the lease for HRB, "remitting proceeds attributable to [HRB's] interest on a monthly basis" and also "deliver[ing] monthly joint interest billing ("JIBs") statements to [HRB] . . . for its . . . respective share of . . . costs and expenses." In December 2015, Peregrine

2

notified HRB that a reconciliation of accounts was necessary because Peregrine had come to realize that the payouts and JIBs issued in June 2013 had been made based on the before-payout interest and should have been made based on the after-payout interests as set forth in the Participation Agreement. According to Peregrine, HRB owed it $210,883.31. And despite its requests, HRB failed to reimburse Peregrine. Thus, Peregrine, through March 2016, retained $39,648.54 in sales from HRB's production under the lease and applied that amount to HRB's "obligations" to Peregrine. However, HRB refuses to pay the remaining $171,234.77 owed.

Peregrine asserts causes of action against HRB for breach of contract, based on HRB's alleged refusal to return "those funds credited to it but for which it did not own any working interest" under the Participation Agreement, and for money had and received. It seeks recovery of $171,234.77, the amounts remaining from its overpayments to HRB, pre-judgment and post-judgment interest, and attorneys' fees.

HRB answered, generally denying Peregrine's claims and asserting various affirmative defenses. It subsequently filed a Motion for Partial Summary Judgment, arguing that Peregrine's breach-of-contract claim failed as a matter of law because "its mere acceptance of overpayments due to Peregrine's negligence cannot be considered a breach of contract" under the Participation Agreement.

And HRB asserted that the two-year statute of limitations barred Peregrine's claim for money had and received.

After Peregrine obtained a continuance of the summary-judgment hearing, it deposed HRB's corporate representative, Ben Hale. Peregrine asked Hale about HRB's compliance with the Participation Agreement and the Offshore Operating Agreement ("OOA"), which is attached as Exhibit "C" to the Participation Agreement.

HRB then filed its Amended Motion for Partial Summary Judgment, asserting that there is no "promise or undertaking of HRB to pay Peregrine any amounts for alleged overpayments" in paragraph 4 of the Participation Agreement, the assignment delineating HRB's working and revenue interests ("Assignment"), the OOA, or the Accounting Procedure attached to the OOA. It stated that "[i]t became clear during the deposition of HRB's corporate representative that Peregrine is now contending that HRB has a contractual obligation under the [OOA] to repay Peregrine the alleged prior overpayment of production revenues and pipeline revenues." And HRB asserted that the OOA has no provisions "relating to the accounting for (or repayment of) revenues received from the sale of production (or transportation revenues received from third parties)." Rather, the OOA "only addresses the payment of costs incurred in the operation of the" lease. Thus, even "assuming *arguendo* that Peregrine's retroactive calculations are

correct (which HRB disputes), HRB has no contractual obligation under the Assignment, the Participation Agreement or the [OOA] . . . to repay Peregrine the alleged overpayment of revenues made by Peregrine." HRB argued that Peregrine's breach-of-contract claim fails "as a matter of law" because HRB did not breach any contractual provision. And it further argued that Peregrine's claim for money had and received fails "as a matter of law" because it was brought outside the two-year statute of limitations.

HRB attached to its Amended Motion for Partial Summary Judgment the Participation Agreement, the Assignment, and the Payout Notification and Request for Assignment ("Payout Notification") in which Peregrine stated that "payout" under the Participation Agreement had occurred on June 1, 2013. The Payout Notification further advised HRB that Peregrine had made retroactive adjustments to HRB's costs and revenues based on the payout date and its belief that it had overpaid HRB by $210,883.31. HRB also attached to its motion Peregrine's responses to HRB's first and second interrogatories in which Peregrine admitted that its claim for breach of contract is based upon the alleged breach of Paragraph 4 of the Participation Agreement and the terms of the Assignment.

In its response to HRB's Amended Motion for Partial Summary Judgment, Peregrine argued that because HRB had filed the motion before Peregrine had filed its amended petition, HRB's motion does not address the expanded basis for its

5

breach-of-contract claim under Article 8.7 of the OOA. In relevant part, this provision requires that "if a party believes that Operator's charges, or a portion thereof, are incorrect," it must "nevertheless pay the charges claimed by Operator" and then later "notify Operator that the charges are in dispute." Peregrine further asserted that Hale, in his deposition, admitted to HRB's failure to comply with this provision. Thus, even assuming that HRB is correct that the overpayments at issue were not proper charges under the OOA, the OOA's plain language required HRB to first pay the charges and then object to their validity. Peregrine further argued that the statute of limitations does not bar its claim for money had and received because it did not begin to run until November 2015, when Peregrine sent HRB an invoice for the overpayments.

Peregrine attached to its response the Participation Agreement; a copy of a September 2014 email regarding payout; an Accounts Receivable Summary Statement, dated November 30, 2015; the Payout Notification; a Notice of Pending Default, dated February 9, 2016; and the deposition transcript of Hale in which he testified that although HRB had received a JIB including account adjustments in the amount of $210,883.31, it did not pay this amount. It also attached the Affidavit of Timothy A. Austin, a Vice President of Business Development and Land for Peregrine. In it, he testified about the billing and payment practices between Peregrine and HRB, explaining that reconciliation of the accounts was

6

necessary because "between June 2013 and April 2014, all non-Operators received and paid JIBs based on their incorrect and higher before[-]payout . . . working interest" and "had been paid proceeds of production by Peregrine at their incorrect and higher [before-payout] net revenue interest." Austin further stated that he had more than thirty-five years of experience in the oil and gas industry and reconciliation of accounts and reimbursement for overpayments after payout is a common practice in the industry.

In its reply, HRB asserted that the only "charges" it was obligated to pay under Article 8.7 of the OOA were "costs incurred in connection with operations." Specifically, HRB asserted that there are "no provisions of the OOA directly addressing what 'charges' Peregrine is authorized to include in JIBs and the other provisions of the OOA, coupled with common sense and Peregrine's own statements, support the conclusion that the 'charges' covered by Article 8.7—and for which HRB is contractually obligated to pay—are the costs associated with the drilling, completing, equipping and operating a well." To hold otherwise, according to HRB, would impose a contractual obligation on it to pay any charge Peregrine includes in its JIBs, which is unreasonable as those charges "must have some relation to the costs of drilling, completing, equipping or operating" the lease. In regard to the statute of limitations barring Peregrine's claim for money had and received, HRB asserted that Peregrine's argument in its response concerns

7

only tolling and it did not plead for the application of the discovery rule or fraudulent concealment.

On November 8, 2016, Peregrine filed its first amended original petition, adding, among other items, the allegation that HRB had breached the OOA by failing to pay Peregrine the $210,883.31 owed to it after delivery of the November 2015 invoice. This, according to Peregrine, was contrary to the express terms of Article 8.7 of the OOA, which requires a party who believes the Operator's charges are incorrect to "nevertheless pay the charges claimed by Operator" and then "notify Operator that the charges are in dispute . . . ."

Peregrine subsequently filed a motion for summary judgment on its breach-of-contract claim against HRB, asserting that Article 22.5 of the OOA obligated HRB to reimburse it for its costs incurred in delivering or disposing of HRB's share of oil, gas, or condensate. Despite receiving an invoice in November 2015,[1] which included the amount that HRB owed to Peregrine as a result of the account adjustments, HRB failed to pay Peregrine. Peregrine further asserted that Article 8.7 of the OOA requires a party disputing a charge from the Operator to first pay the charge and then notify the Operator that it objects to the charge. Thus, according to Peregrine, "HRB's continued non-payment of the amounts owed

---

[1] Peregrine also asserted that it had complied with its obligations under the OOA to perform all account adjustments within twenty-four months of the end of the calendar year in which the incorrect payments or charges were made.

8

Peregrine and [its] . . . disregard and failure to follow the provisions set forth in the [Participation Agreement] and OOA constitute a breach of contract," warranting summary judgment in its favor.

Peregrine attached to its summary-judgment motion the Participation Agreement; an Accounts Receivable Summary Statement sent to HRB in November 2015 that includes a "Miscellaneous Invoice" for $210,883.31; the Payout Notification, dated December 15, 2015, and sent to HRB; the deposition transcript of Hale; and the affidavit of Austin.

In its response to Peregrine's summary-judgment motion, HRB asserted that it had no contractual obligation to return any overpaid revenues. And, even if it did, it disputed Peregrine's "calculation of the alleged overpayments because Peregrine's calculation of payout included gas transportation revenues owed to HRB under a completely separate and distinct Production Handling Agreement." Thus, as such, revenues "should not have been credited as production revenues from the Test Well which was the subject of the Participation Agreement."

After a hearing, the trial court, on February 8, 2017, denied Peregrine's summary-judgment motion and granted HRB's summary-judgment motion. And Peregrine filed a motion for reconsideration. Then, on March 8, 2017, the trial court withdrew and replaced its February 8, 2017, order with an Amended Order, specifying that HRB's "Amended Motion for Partial Summary Judgment asserting

9

that the breach of contract claims in [Peregrine's] First Amended Original Petition fail, as a matter of law, to state a cause of action is GRANTED." It further granted HRB's "Amended Motion for Partial Summary Judgment asserting that Texas'[s] two[-]year statute of limitations applies to [Peregrine's] claims for overpayments." And it denied Peregrine's motion for reconsideration. The trial court signed its final judgment in favor of HRB on April 18, 2017.

## Amended Pleadings

In its first and second issues, Peregrine argues that the trial court erred in granting summary judgment in favor of HRB on a superseded pleading because after HRB had filed its amended summary-judgment motion, Peregrine filed its first amended original petition, asserting a new basis for its breach-of-contract claim.

Generally, "[a] plaintiff's timely filed amended pleading supersedes all previous pleadings and becomes the controlling petition in the case." *Elliott v. Methodist Hosp.*, 54 S.W.3d 789, 793 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see also* TEX. R. CIV. P. 63, 65. A plaintiff timely files an amended pleading if it does so seven days before trial. TEX. R. CIV. P. 63; *see also Sosa v. Cent. Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995) (under rule 63, leave not required for plaintiff to amend if amended petition filed "seven days or more before the date of trial" (internal quotations omitted)). For purposes of rule 63,

10

"[a] summary judgment proceeding is a trial." *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988); *Wheeler v. Yettie Kersting Mem'l Hosp.*, 761 S.W.2d 785, 787 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

Peregrine filed its first amended original petition on November 8, 2016, and the record shows that the trial court signed its order granting summary judgment almost three months later on February 8, 2017. Thus, Peregrine timely filed its first amended original petition. *See Sosa*, 909 S.W.2d at 895 (second amended petition timely filed "exactly one week before a scheduled summary judgment hearing"). Accordingly, we conclude that Peregrine's first amended original petition was its live pleading at the time that the trial court rendered summary judgment on its claims. *See Sosa*, 909 S.W.2d at 895; *Elliott*, 54 S.W.3d at 793.

Once a plaintiff has timely amended its petition to add new claims, the defendant is not entitled to a summary judgment on the plaintiff's entire case, unless the defendant amends or supplements its summary-judgment motion to address the newly-added claims. *See Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also Sosa*, 909 S.W.2d at 895 (when amended petition timely filed, trial court must base its decision on amended pleading, not any superseded petition); *Johnson v. Rollen*, 818 S.W.2d 180, 183 (Tex. App.—Houston [1st Dist.] 1991, no writ) ("A summary

judgment may not be granted . . . on a cause of action not addressed in the summary judgment proceeding.").

However, although a trial court errs in granting summary judgment on a ground or claim not addressed in a summary-judgment motion, such error is rendered harmless if "the omitted cause of action is precluded as a matter of law by other grounds raised in the case." *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297–98 (Tex. 2011). Similarly, we may affirm the summary judgment if (1) the amended or supplemental petition essentially reiterates previously-pleaded causes of action, (2) a ground asserted in the summary-judgment motion conclusively negates a common element of the newly- and previously-pleaded claims, or (3) the original motion is broad enough to encompass the newly asserted claims. *Coterill-Jenkins v. Tex. Med. Ass'n Health Care Liab. Claim Trust*, 383 S.W.3d 581, 592 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Here, Peregrine asserts that HRB's summary-judgment motion failed to address the expanded factual basis for its breach-of-contract claim, as pleaded in its first amended original petition, that "after delivery of its November 2015 JIB to [HRB], demanding repayment of the $210,883.31 overpayment, [HRB] failed to pay such amount, contrary to the express language of Article 8.7 of the OOA." However, even though HRB filed its amended summary-judgment motion before Peregrine had filed its first amended original petition, "[i]t became clear during the

deposition of HRB's corporate representative that Peregrine is now contending that HRB has a contractual obligation under the [OOA] to repay Peregrine the alleged prior overpayment of production revenues and pipeline revenues." HRB further asserted that the OOA has no provisions "relating to the accounting for (or repayment of) revenues received from the sale of production (or transportation revenues received from third parties)"; rather, it "only addresses the payment of costs incurred in the operation of the" lease. It concluded, even "assuming *arguendo* that Peregrine's retroactive calculations are correct (which HRB disputes), HRB has no contractual obligation under the Assignment, the Participation Agreement or the [OOA] . . . to repay Peregrine the alleged overpayment of revenues made by Peregrine," and so "Peregrine's breach of contract cause of action must fail as a matter of law" because HRB did not breach any contractual provision.

Further, in reply to Peregrine's response, HRB also asserted that the only "charges" it was obligated to pay under Article 8.7 of the OOA are for "costs incurred in connection with operations." Specifically, HRB asserted that there are "no provisions of the OOA directly addressing what 'charges' Peregrine is authorized to include in JIBs and the other provisions of the OOA, coupled with common sense and Peregrine's own statements, support the conclusion that the 'charges' covered by Article 8.7—and for which HRB is contractually obligated to

13

pay—are the costs associated with drilling, completing, equipping and operating a well." To hold otherwise, according to HRB, would impose a contractual obligation on it to pay any charge Peregrine includes in its JIBs, which is unreasonable as those charges "must have some relation to the costs of drilling, completing, equipping or operating" the lease.

Even though HRB filed its amended summary-judgment motion before Peregrine had filed its first amended original petition, the amended motion was broad enough to encompass the newly asserted claims in Peregrine's new petition.[2] *See id.* And the trial court, in its March 8, 2017 amended order, specifically granted summary judgment on the "breach of contract claims in [Peregrine's] First Amended Original Petition." Accordingly, we hold that the trial court's summary-judgment was not based on a superseded pleading.

We overrule Peregrine's first and second issues.

## Summary Judgment

In its third, fifth, and sixth issues, Peregrine contends that the trial court erred in granting summary judgment on Peregrine's claims for breach of contract and money had and received and in denying Peregrine summary judgment on its claim for breach of contract.

---

[2] Having concluded that HRB's summary-judgment motion was broad enough to encompass the newly asserted claim in Peregrine's first amended original petition, we need not address HRB's claim that Peregrine waived its argument to this alleged defect.

14

To prevail on a summary-judgment motion, a movant has the burden of establishing that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a plaintiff moves for summary judgment on its own claim, it must conclusively prove all essential elements of its cause of action. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). "Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor." *Id.* at 549.

When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment proof presented by both sides and determine all questions presented. *See Centerpoint*

*Energy Hous. Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

***Breach of Contract***

In its third and sixth issues, Peregrine argues that the trial court erred in granting HRB summary judgment, and denying Peregrine summary judgment, on Peregrine's breach-of-contract claim because HRB did not "conclusively negate any element" of the claim and Peregrine "conclusively established each essential element" of the claim.

A successful breach-of-contract claim requires proof of the following essential elements: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the defendant's breach. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

In construing a written contract, the primary concern is to ascertain and give effect to the parties' intentions as expressed in the document. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005). We begin with the contract's language. *Italian Cowboy*, 341 S.W.3d at 333.

16

Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows that the terms were used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). When a contract contains an ambiguity, a fact issue arises as to the intent of the parties and, therefore, granting summary judgment is improper. *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015) ("Summary judgment is not the proper vehicle for resolving disputes about an ambiguous contract."); *Moncrief v. ANR Pipeline Co.*, 95 S.W.3d 544, 546–47 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (analyzing whether ambiguity existed, which would create fact issue precluding summary judgment).

Peregrine specifically argues that HRB breached Article 8.7 of the OOA because it refused to pay the November 2015 JIB within forty-five days of billing for the complained-of overpayments.[3] Peregrine asserts that HRB was "required to first pay the charge and then initiate an objection to the charge." HRB asserts that the allegedly overpaid revenues are not "charges due" under the OOA. And, absent any contractual provision obligating HRB to refund overpaid revenues, Peregrine cannot sustain a breach-of-contract claim.

Article 8 of the OOA provides, in relevant part:

---

[3] Peregrine does not raise any issues on appeal regarding its assertion below that HRB breached the Participation Agreement.

17

**8.1    Basis of Charge to the Parties.**    Subject to the provisions of this Agreement, Operator shall pay all costs incurred under this Agreement, and each Party shall reimburse Operator in proportion to its Participating Interest.   All charges, credits, and accounting for expenditures shall be made and done pursuant to "Exhibit C."

**8.7    Unpaid Charges and Default.** If a Party fails to pay the charges due under this Agreement within forty-five (45) days after rendition of Operator's statement, . . . Operator [may] issue[] a notice of default . . . .   If a Party believes that Operator's charges, or a portion thereof, are incorrect, *that Party shall nevertheless pay the charges claimed by Operator and may notify Operator that the charges are in dispute*.   Thereafter, Operator and the Non-Operator shall attempt to resolve the issue within sixty (60) days after receipt of payment.

(Emphasis added.)

Article 8.7 clearly provides that a party should first pay "charges" and then notify the Operator of any charge that is in dispute.  However, the term "charges" is not defined specifically anywhere in the Participation Agreement, the OOA, or the Accounting Procedure Offshore Joint Operations ("Accounting Procedure") in Exhibit "C" to the OOA.  And while the Accounting Procedure does set forth the expenses that the "Operator shall *charge* the Joint Account,"[4] including specific direct charges and overhead for which Peregrine may charge the Joint Account, it

---

[4]    The Accounting Procedure defines "Joint Account" as "the account showing the charges paid and credits received in the conduct of the Joint Operations and which are to be shared by the Parties."  "Joint Operations" is defined as "all operations necessary or proper for the development, operation, protection and maintenance of the Joint Property."  And "Joint Property" is defined as "the real and personal property subject to the [OOA] to which this Accounting Procedure is attached."

also contemplates "unusual charges and credits" that "shall be separately identified and fully described in detail" in regard to "Statements and Billings."

Additionally, the plain meaning of the word "charge" does not provide any guidance as to whether an invoice for return of overpayments under these circumstances constitute a "charge" that must be paid first, regardless of whether it is in dispute. As a noun, "charge" is defined as a "[p]rice, cost, or expense." *Charge*, BLACK'S LAW DICTIONARY (9th ed. 2009). As a verb, the word "charge" is defined as "[t]o demand a fee" or "to bill." *Id.*

Here, the parties' intent is unclear in regard to what charges a non-operator is required to pay, even when they are contested, to avoid breaching Article 8.7 of the OOA. On the one hand, Article 8.7 does provide that the non-operator must pay the Operator's charges, even if it believes that they are incorrect. It may then subsequently notify the Operator if any charge is in dispute. And "charges" is undefined. Further, Timothy Austin, a Vice President for Business Development and Land for Peregrine who has worked in the industry for "more than thirty-five years," stated in his affidavit that such reconciliation of accounts and reimbursement for overpayments after payout is a common practice in the industry.[5] On the other hand, Article 8.1 of the OOA requires that all "charges,

---

[5]     To determine whether a contract is ambiguous, we may examine extrinsic evidence to interpret the contractual terms used by the parties so long as such evidence does not contradict or vary the meaning of the explicit language of the

19

credits and accounting for expenditures shall be made and done pursuant to" the Accounting Procedure. And the Accounting Procedure does not appear to account for charges in the form of reimbursement of allegedly overpaid revenues. It appears that the parties did not intend for the term "charges," in regard to HRB's obligation to pay before contesting, to include anything that Peregrine might possibly include in an invoice. However, it is not clear wheter the parties intended the word "charges" to be interpreted as broadly as argued by Peregrine, as narrowly as argued by HRB, or somewhere in between.

We conclude that the summary-judgment evidence in the record raises a genuine issue of material fact as to whether the alleged overpayments are "charges" due under the agreement. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (contract ambiguous if subject to two or more reasonable interpretations). Accordingly, we hold that the trial court erred in granting HRB summary judgment on Peregrine's breach-of-contract claim.

We sustain Peregrine's third issue.

Having held that there is a fact issue as to whether HRB breached Article 8.7 of the OOA, this same fact issue precludes summary judgment in Peregrine's favor on its breach-of-contract claim. *See Steel*, 997 S.W.2d at 223 (plaintiff must conclusively prove each essential element of its cause of action to be entitled to

---

written contract. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995).

20

summary judgment).  Accordingly, we hold that the trial court did not err in denying Peregrine's summary judgment on its breach-of-contract claim.

We overrule Peregrine's sixth issue.

In its fifth issue, Peregrine contends that the trial court, in rendering its decision, erred in relying on *Mobil Producing Texas & New Mexico, Inc. v. Cantor*, 93 S.W.3d 916 (Tex. App.—Corpus Christi 2002, no pet.).  *Mobil* merely stands for the proposition that, absent a contractual obligation on point, there could be no breach of contract for a defendant's failure to return alleged overpayments, and, thus, there could only "be recovery under a quasi-contract theory such as unjust enrichment."  *Id.* at 919–20.  This principle is directly applicable to the present case.  If there is no contractual provision on point that would prevent HRB from accepting, or requiring HRB to return, alleged revenue overpayments, Peregrine would only be able to seek recovery through a claim in equity, not for breach of contract.  *See Fortune Prod. Co v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (citing *Sw. Elec. Power Co. v. Burlington N. R.R.*, 966 S.W.2d 469–70 (Tex. 1998) (recognizing overpayments under a contract can be recovered under a theory of restitution or unjust enrichment under certain circumstances)).  This is consistent with HRB's argument in the trial court and on appeal that there is no contractual provision that governs return of the alleged revenue overpayments.  And there is nothing in the record to suggest that the trial court extrapolated the

21

reasoning of *Mobil* beyond this basic legal principle. Accordingly, we hold that the trial court did not err in its reliance, if any, on *Mobil*.

We overrule Peregrine's fifth issue.

### *Money Had and Received*

In its fourth issue, Peregrine argues that the trial court erred in granting HRB summary judgment on Peregrine's claim for money had and received as barred by the two-year statute of limitations because the claim did not accrue until Peregrine had performed a reconciliation of accounts in November 2015 and realized how much money it had allegedly overpaid HRB. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (a) (Vernon 2017); *Merry Homes, Inc. v. Luc Dao*, 359 S.W.3d 881, 884 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding claims for money had and received governed by two-year statute of limitations applicable to unjust-enrichment claims).

When a cause of action accrues is a question of law. *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). A cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy, regardless of when the plaintiff is aware of such facts. *Id.* When applicable, the discovery rule will toll the statute of limitations such that it does not begin to run until the date on which the plaintiff knew or reasonably should have known of the facts giving rise to its cause of

22

action. *Barker v. Eckman*, 213 S.W.3d 306, 311-12 (Tex. 2006). The discovery rule is an affirmative defense that must be affirmatively pleaded and proved. *Id.* at 312. To invoke the discovery rule, a plaintiff must establish that its injury is both inherently undiscoverable and objectively verifiable. *Id.*

A person must bring a suit for money had and received no later than two years after the date the cause of action accrues. *Merry Homes*, 359 S.W.3d at 884 (holding claims for money had and received governed by two-year statute of limitations applicable to unjust-enrichment claims). A cause of action for money had and received generally accrues when money is paid. *Merry Homes, Inc. v. Luc Dao*, No. 14-16-00724-CV, 2017 WL 4159206, at *3 (Tex. App.—Houston [14th Dist.] Sept. 19, 2017, no pet.) (mem. op.) (citing *City of Beaumont v. Moore*, 202 S.W.2d 448, 452 (Tex. 1947); *Autry v. Dearman*, 933 S.W.2d 182, 190 n.7 (Tex. App.—Houston [14th Dist.] 1996, writ denied)).

Here, it is undisputed that over two years had passed from the date of the last overpayment until Peregrine sued HRB for money had and received.[6] Peregrine asserts, however, that its cause of action for those funds did not accrue until after it had reconciled its accounts and submitted a JIB for repayment in November 2015. It is true that certain circumstances may affect an accrual date, such as when

---

[6]    Peregrine admits that it performed the reconciliation of accounts for a period between the date of payout, June 2013, and the date by which accounts were adjusted to reflect their correct after-payout interests, May 2014. Peregrine did not file suit until July 8, 2016.

23

money is originally held rightfully, but later retained inequitably, or where the viability of a cause of action depends upon the outcome of another case. *See, e.g.*, *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 513 (Tex. App.—Fort Worth 2012, pet. denied) (holding claim for money had and received did not accrue when money paid, but instead when party retained funds paid under contract after contract rescinded). But, this is not the case here where Peregrine's claim is that it accidentally overpaid HRB by not adjusting the interest after payout and it did not become aware of the problem until it had reconciled its accounts and sought reimbursement in the November 2015 JIB. And Peregrine neither pleaded nor raised a fact issue about application of the discovery rule or fraudulent concealment regarding its cause of action for money had and received. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) (holding discovery rule waived where not pleaded or proved).

Peregrine argues that because it followed the Accounting Procedure within the time provided in the OOA, its cause of action did not accrue until it had reconciled its accounts. It is effectively arguing for the application of the discovery rule as it is relying on its November 2015 reconciliation of accounts as the date it discovered the erroneous overpayments. *See Barker*, 213 S.W.3d at 312 (discovery rule works to toll statute of limitations until date on which plaintiff knew facts giving rise to injury).

24

In support of its position, Peregrine also relies on Article 1.4 of Exhibit C to the OOA, which provides, in relevant part:

4. Adjustments

Payment of any such bills shall not prejudice the right of any non-Operator to protest or question the correctness thereof; provided, however, all bills and statements rendered to non-Operators by Operator during any calendar year shall conclusively be presumed to be true and correct after twenty-four (24) months following the end of any such calendar year, unless within the said twenty-four (24) month period a Non-Operator takes written exception thereto and makes claim on Operator for adjustment. No adjustment favorable to Operator shall be made unless it is made within the same prescribed period . . . .

While this provision arguably requires Peregrine to question the correctness of past bills and make adjustments within twenty-four months, nowhere does this provision, or any other evidence in the record, demonstrate that the parties intended to extend the statute of limitations for causes of action arising from reconciliation of improper charges to accounts.

Accordingly, we hold that the trial court did not err in granting HRB summary judgment on Peregrine's claim for money had and received on the ground that it is barred by the two-year statute of limitations.

We overrule Peregrine's fourth issue.

**Conclusion**

We reverse the portion of the trial court's judgment granting HRB summary judgment on Peregrine's breach-of-contract claim and remand this claim to the trial court for further proceedings consistent with this opinion. We affirm the remainder of the trial court's judgment.


Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.